Amber Henning
Kirk D. Evenson
MARRA, EVENSON & LEVINE, P.C.
2 Railroad Square, Suite C
P.O. Box 1525
Great Falls, Montana 59403-1525
Telephone (406) 268-1000
Facsimile (406) 761-2610
Direct e-mail: ahenning@marralawfirm.com
            kevenson@marralawfirm.com

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| ITRIA VENTURES, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>MARQUIS CATTLE COMPANY;<br>CORY SHANNON MARQUIS; AND<br>BECKIE JO MARQUIS,<br><br>Defendants. | Cause No. CV-23-24-GF-BMM-JTJ |

MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO
REMAND AND CROSS-MOTION TO COMPEL ARBITRATION AND
TRANSFER THE CASE TO THE SOUTHERN DISTRICT OF NEW YORK

1

# TABLE OF CONTENTS

                                                              **Page**

I.    PROCEDURAL HISTORY ............................... 3

II.   LEGAL STANDARDS ............................. 6

      A.    STANDARD FOR REMAND..................... 6

      B.    STANDARD FOR COMPELLING ARBITRATION .. 8

      C.    STANDARD FOR TRANSFERRING THE CASE .... 9

III.  THE MOTION TO REMAND SHOULD BE DENIED AS FORUM-SELECTION CLAUSE IS SUBJECT TO THE ARBITRATION CLAUSE ...................... 10

IV.  THE COURT SHOULD COMPEL ARBITRATION AND TRANSFER THE CASE TO THE SOUTHERN DISTRICT OF NEW YORK ......................... 14

V.   CONCLUSION ..................................... 16

Defendants Marquis Cattle Company ("Marquis Cattle"), Cory Shannon Marquis and Becki Jo Marquis (collectively "Defendants") respectfully submit this Memorandum of Law in Opposition to Motion to Remand by Plaintiff Itria Ventures LLC ("Itria") and in Support of Defendants' Cross-Motion to Compel Arbitration and Transfer the Case to the Southern District of New York.

## I. PROCEDURAL HISTORY

In December 2021, Marquis Cattle entered into a contract ("First Contract") with Itria with the individual defendants acting as guarantors. Itria is "a Limited Liability Company organized and existing pursuant to the laws of Delaware with a principal place of business at One Penn Plaza, Suite 4530, New York, New York 10119." Compl. ¶1. Under the Contract, Itria agreed to give $575,500 to Marquis Cattle in return for $12,500 every week for 60 weeks until Itria had received $750,000. *First Contract* at 1 (CM/ECF 9-1 at 2-19).

Section 15(g) of the Contract contains an arbitration clause that states in full:

> (g) Arbitration. Notwithstanding any provision hereof, and excluding any action by Purchaser for injunctive relief under this Agreement, each party agrees to confidential arbitration of all disputes and claims arising out of or relating to this Agreement, including issues relating to the arbitrability of any dispute or claim (collectively, "claims") at the request of the other party. If a party seeks to have a dispute settled by arbitration, that party must first send to the other party, by certified mail, a written Notice of Intent to Arbitrate (the "Notice"). If the parties do not reach an agreement to resolve the claim within thirty (30) days after the Notice is received, Purchaser and Merchant agree

3

> that the claim will be resolved by a final and binding arbitration proceeding with JAMS, Inc. ("JAMS") in New York County, State of New York, under the Optional Expedited Arbitration Procedures then in effect. The parties agree that, except as otherwise expressly required by JAMS rules, (i) the party filing arbitration shall pay all JAMS filing fees and reasonable administrative fees; (ii) thereafter, each party shall bear its own arbitration costs and fees, including witness fees and attorneys' fees; and (i) each party shall bear an equal share of the arbitrator's fees; provided, if the arbitrator finds that either the substance of the claims of any party or the relief sought by any party is frivolous or brought for an improper purpose (as measured by the standards set forth in Federal Rule of Civil Procedure 11(b)), then the arbitrator shall award the other party all of its costs and fees of the arbitration, including witness and reasonable attorneys' fees. Purchaser and Merchant agree that, except as expressly otherwise provided herein, (i) **arbitration is the required and exclusive forum for the resolution of all claims** and (ii) to the fullest extent permitted by law, Purchaser and Merchant are each permanently giving up their right to a jury trial in any forum and the right to a judicial forum for the resolution of any and all claims. Further, the parties agree that the arbitrator may not consolidate proceedings for more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding, and that if this specific provision is found unenforceable, then the entirety of this arbitration clause shall be null and void.

*First Contract*, § 15(g). Marquis Cattle and Itria also agreed that "This Agreement and all transactions here under, including without limitation the purchase and sale of Future Receivables as specified herein, will be governed by and enforced exclusively in accordance with the internal laws of the State of New York, without regard to conflict of laws principles." *First Contract*, § 15(b) (emphasis added).

4

In March 2022, Marquis Cattle and Itria entered into another contract ("Second Contract" at 1, CM/ECF 9-1 at 21-39) that is identical in all respects to the First Contract except for the fact that Itria agreed to give $339,000.00 to Marquis Cattle in return for $9,114.58 every week for 48 weeks until Itria had received $437,500.00. *Second Contract* at 1. The Second Contract contains the same arbitration clause and choice of law provision electing New York as the governing law. *Second Contract*, § 15(b) & (g).

On April 21, 2023, Itria filed a complaint in state court in Montana's Eighth Judicial Court (Cascade County) alleging breach of contract under New York law. On May 19, 2023, Marquis Cattle removed the case from state court to this Court pursuant to 28 U.S.C. § 1441 based on diversity jurisdiction – that is, the original subject-matter jurisdiction that has allowed federal courts to adjudicate disputes between citizens of different states since 1789.[1] On the same day, counsel for Marquis Cattle gave notice of intent to arbitrate to counsel for Itria.

On June 16, 2023, Itria filed its motion to remand the case to state court based on the provision of the contracts that states:

---

[1] *See* U.S. Const. art. III, § 2 ("The judicial Power shall extend . . . to Controversies . . . between Citizens of different States . . . ."); 28 U.S.C. § 1332(a) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States . . . .").

5

> ***Venue and Personal Jurisdiction.*** Subject to Section 15(g) [emphasis in original], the parties irrevocably consent to the exclusive jurisdiction and venue of state courts located in: (x) the State of New York; (y) the State of Merchant's incorporation or formation or where its operations, offices, assets or domicile are located; or (z) the state where any Guarantor resides . . . .

*First Contract*, § 15(b); *Second Contract*, § 15(b).

Marquis Cattle now opposes this motion to remand and cross moves for the Court to compel arbitration under the Federal Arbitration Act, 9 U.S.C. §§ 1-16, and to transfer the case to the Southern District of New York under 28 U.S.C. 1404(a).

## II.   LEGAL STANDARDS

### A.   STANDARD FOR REMAND

An action may be removed to federal court if the federal court could have exercised original jurisdiction. *See, e.g., Andersch v. Northwestern Corp.*, 2010 WL 3034606, at *1 (D. Mont. 2010) (citing 28 U.S.C. § 1441). While federal courts strictly construe the right to remove, courts "must be equally vigilant in protecting a defendant's right to proceed in federal court as it is in respecting the state court's right to retain jurisdiction." *Hialeah Anesthesia Specialists, LLC v. Coventry Health Care of Fla., Inc.*, 258 F. Supp. 3d 1323, 1327 (S.D. Fla. 2017); *see generally* The Federalist No. 80, at 390 (Alexander Hamilton) (Jim Miller ed.,

6

2017) (stating "the national judiciary ought to preside in all cases in which one state or its citizens are opposed to another state or its citizens").[2]

In diversity cases, the interpretation and enforcement of a forum selection clause is governed by federal law.[3] *Fayle v. TSYS Merchant Solutions, LLC*, 470 F. Supp. 3d 1182, 1184 (D. Mont. 2020) (citing *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009)). Under federal law, "'the plain language of the contract should be considered first[.]'" *Simonoff v. Expedia, Inc.*, 643 F.3d 1202, 1205 (9th Cir. 2011) (quoting *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999)). When contractual terms are ambiguous, a court should construe the language against the drafter of the contract. *See, e.g., Interpetrol Bermuda Ltd. v. Kaiser Aluminum Int'l Corp.*, 719 F.2d 992, 998 (9th

---

[2] "Diversity jurisdiction is founded on assurance to non-resident litigants of courts free from susceptibility to potential local bias." *Guaranty Trust Co. v. York*, 326 U.S. 99, 111 (1945); *Lively v. Wild Oats Markets, Inc.*, 456 F.3d 933, 940 (9th Cir. 2006) (citing *Tosco Corp. v. Cmtys. for a Better Env't*, 236 F.3d 495, 502 (9th Cir. 2001)).

[3] A contractual forum selection clause is "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Offshore Co.*, 407 U.S. 1, 10 (1972); *see also Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*, 741 F.2d 273, 280 (9th Cir. 1984). By way of background, prior to 1972, courts largely rejected forum selection clauses until the Supreme Court decided *Bremen*. *See generally* Leandra Lederman, *Viva Zapata!: Toward a Rational System of Forum Selection Clause Enforcement in Diversity Cases*, 66 N.Y.U. L. REV. 422, 427-28 1991).

Cir. 1983). Federal district courts enjoy discretion to grant or deny a motion to remand. *See Baddie v. Berkeley Farms, Inc.*, 64 F.3d 487, 490 (9th Cir. 1995).

### B. STANDARD FOR COMPELLING ARBITRATION

The Federal Arbitration Act ("FAA") provides that arbitration agreements governed by the FAA "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *Circuit City Stores v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002). The statute reflects a "liberal policy favoring arbitration agreements." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991).

The FAA allows "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States District Court . . . for an order directing that . . . arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4; *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The role of a district court in determining whether to compel arbitration is limited. The FAA limits courts' involvement to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (cleaned up). If the parties are bound and the arbitration clause is implicated, the

court must direct the parties to arbitration. *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 217 (1985).

### C.     STANDARD FOR TRANSFERRING THE CASE

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "Section 1404(a) is . . . a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer." *Atlantic Marine Construction Co. v. United States District Court for the Western District of Texas*, 571 U.S. 49, 60 (2013); *see also Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007).

"Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (quoting *Van Dusen v. Barrack*, 276 U.S. 612, 622 (1964)). The purpose of 28 U.S.C. § 1404(a) is "to prevent the waste of time, energy and money and to protect litigants, witnesses, and the public against unnecessary

inconvenience and expense." *Van Dusen*, 276 U.S. at 616 (quotation marks omitted).

## III. THE MOTION TO REMAND SHOULD BE DENIED AS FORUM-SELECTION CLAUSE IS SUBJECT TO THE ARBITRATION CLAUSE

The agreed-upon dispute mechanism in this case is "a final and binding arbitration proceeding . . . in New York County, State of New York." *First Contract*, § 15(g).[4] The parties agreed to have New York law control. *See id.* § 15(a). The parties also agreed:

> (i) Purchaser maintains its principal office in the State of New York; (ii) the Funding Call and customer service will take place with Purchaser's representatives in the State of New York; (iii) all funding to and payments from Merchant under this Agreement will be processed through Purchaser's Bank branches in New York; and (iv) the purchase and sale of Future Receivables pursuant to this Agreement shall take place in New York. Accordingly, the parties agree that this Agreement and its subject matter bears a "significant, material and reasonable relationship" with the State of New York.

*Id.*

Not surprisingly, the contract's forum-selection clause does not apply to the clause concerning arbitration including which court may compel the parties to arbitration. The contract clearly states:

---

[4] As the Contracts are identical, Defendants are only citing to one of them for the ease of reading.

> ***Venue and Personal Jurisdiction.*** Subject to <u>Section 15(g)</u> [emphasis in original] . . . .

Section 15(g) covers arbitration; the parties clearly carved it out of the forum-selection clause.

When interpreting a forum selection clause, the contract terms are to be given their ordinary meaning. *Yankeecub, LLC v. Fendley*, 2021 WL 3603053, at *2 (D. Mont. Aug. 10, 2021) (citing *Ferrari, Alvarez, Olsen & Ottoboni v. The Home Insurance Company*, 940 F.2d 550, 553 (9th Cir. 1991)). "Subject to" is subordinating language. *See* Antonin Scalia & Bryan A. Gardner, Reading Law 126, § 13 (2012).

The contract was clearly subordinating the forum-selection clause to the lengthy and extensive provision concerning arbitration – the agreed-upon method for resolving this dispute. "Drafters often use the qualifiers subject to and notwithstanding (or despite). A dependent phrase that begins with subject to indicates that the main clause it introduces or follows does not derogate from the provision to which it refer." *Id.* The long-held dictionary definition of "subject to" means:

> "[i]n a state of subjection or dependence; under the control, rule, or influence of something; subordinate . . . to the power, law, command, etc. of another"; "[u]nder the power or authority of another"; and

11

"[l]iable, subordinate, subservient, inferior, obedient to; governed or affected by."

*Georgia Ass'n of Latino Elected Offs., Inc. v. Gwinnett Cnty. Bd. of Registration & Elections*, 36 F.4th 1100, 1120-21 (11th Cir. 2022).

The clause of a contract concerning "venue and personal jurisdiction" does not eliminate the federal courts from enforcing a contract requiring binding arbitration between two parties from different states (*i.e.*, New York and Montana) because such a contract is enforced by the Federal Arbitration Act. *See* 9 U.S.C. § 2. Where "a contract evidencing a transaction involving commerce" contains an arbitration clause, as is the case here, the arbitration falls under the FAA. *See Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 272-73 (1995). It makes perfect sense to agree to have federal courts enforce a federal law – that is, the Federal Arbitration Act.

Carving out any judicial act from the federal courts needed to compel arbitration from a section of the contract entitled, "Venue and Personal Jurisdiction," Contract § 15(b), makes even more even sense when read against the backdrop of judicial hostility in some state courts to arbitration. *See, e.g., DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 58-59 (2015); *see also Chamber of Commerce v. Bonta*, 62 F.4th 473 (9th Cir. 2023) ("the Supreme Court has focused on cases involving state laws or judge-made rules that single out executed

arbitration agreements and prevent the enforcement of such agreements according to their terms"). The parties agreed that "arbitration is the required and exclusive forum for the resolution of all claims." Contract, § 15(g). Put simply, it would be nonsensical for the "venue and personal jurisdiction" clause to be read as prohibiting a federal court from compelling arbitration given this agreement when the parties that agreed to arbitration are well-aware that federal courts are more likely to enforce the arbitration agreement.

Finally, it bears emphasizing that when courts interpret a forum selection clause contract under federal law, they look for guidance "to general principles for interpreting contracts." *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999). A "fundamental rule of contract interpretation is that where language is ambiguous the court should construe the language against the drafter of the contract." *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 78 (9th Cir. 1987) (citing *Interpetrol Bermuda Ltd. v. Kaiser Aluminum Int'l Corp.*, 719 F.2d 992, 998 (9th Cir. 1983)). A contract is ambiguous "if reasonable people could find its terms susceptible to more than one interpretation." *Klamath Water*, 204 F.3d at 1210.

The most that Itria can do is put forward another interpretation of the contract. Itria's interpretation – that *only* state courts are allowed to enforce federal

13

law and the arbitration provision so as to compel arbitration of the parties to New York, New York – is unreasonable given that Section 15(b) says "Subject to" before limiting venue. But even if it were deemed reasonable, it still must be rejected because Itria drafted the contract and the langague must be construed against its interpretation. *See Hunt Wesson Foods*, 817 F.2d at 78.

In sum, Section 15(b) of the contracts does not apply when a party to the contracts invokes the Federal Arbitration Act and seeks to compel arbitration under Section 15(g), which is the method the parties agreed would be used to resolve any disputes arising out of the contracts.

## IV. THE COURT SHOULD COMPEL ARBITRATION AND TRANSFER THE CASE TO THE SOUTHERN DISTRICT OF NEW YORK

Because Itria and Defendants agree to arbitration before JAMS in New York, New York, the court must direct the parties to arbitration. *See Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 217 (1985). Courts have no discretion and "*shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (emphasis in original) (quoting *Dean Witter, supra*). Defendants also respectfully move for the case to be transferred to the Southern District of New York, the federal district where the arbitration will take place. *See* 28 U.S.C. § 112 (defining the federal districts of New York). The Southern

District of New York is also where Itria is located, and where the vast majority (if not all) of the witnesses are located. As stated in the contracts:

> (i) Purchaser maintains its principal office in the State of New York; (ii) the Funding Call and customer service will take place with Purchaser's representatives in the State of New York; (iii) all funding to and payments from Merchant under this Agreement will be processed through Purchaser's Bank branches in New York; and (iv) the purchase and sale of Future Receivables pursuant to this Agreement shall take place in New York. Accordingly, the parties agree that this Agreement and its subject matter bears a "significant, material and reasonable relationship" with the State of New York.

*First Contract*, 15(a).

Section 7 of the FAA provides that arbitrators may compel witnesses to attend and bring documents and things to an arbitration hearing. *See* 9 U.S.C. § 7. However, any orders issued by the Arbitrator in this case to compel a witness will have to be enforced by the Southern District of New York. *See id.* ("if any person or persons so summoned to testify shall refuse or neglect to obey said summons, upon petition the United States district court for the district in which such arbitrators, or a majority of them, are sitting may compel the attendance of such person or persons before said arbitrator or arbitrators, or punish said person or persons for contempt in the same manner provided by law for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the

courts of the United States."). Moreover, the Southern District of New York is more familiar with the law that governs this dispute – *i.e.*, New York law.

In sum, the location of relevant documents and the relative ease of access to sources of proof, the locus of operative facts,[5] the availability of process to compel the attendance of unwilling witnesses, the forum's familiarity with the governing law, the efficiency having one court preside over issues related to the arbitration all favor transferring this case to the Southern District of New York.

## V. CONCLUSION

For the reasons above, the Court should deny the motion to remand and issue an order compelling the parties to arbitration before JAMS in New York, New York, and transfer the case to the Southern District of New York.

//

//

//

---

[5] In a breach of contract case, the locus of operative facts is determined by the location where the contract was negotiated or executed, where the contract was to be performed, and where the alleged breach occurred. *See Ivy Soc'y Sports Grp., LLC v. Baloncesto Superior National*, No. 08 Civ. 8106, 2009 WL 2252116, at *6 (S.D.N.Y. July 28, 2009). In the context of § 1404(a) venue analysis, a court "may determine that there are several loci of operative facts." *Adams v. Key Tronic Corp.*, No. 94 Civ. 0535, 1997 WL 1864, at *4 (S.D.N.Y. Jan. 2, 1997). Here, the terms agreed to in the contract and the locus of operative facts is New York.

DATED this 30th day of June, 2023.

        MARRA, EVENSON & LEVINE, P.C.
        2 Railroad Square, Suite C
        P.O. Box 1525
        Great Falls, MT 59403-1525

        By: /s/ Kirk D. Evenson
         Kirk D. Evenson
         Attorneys for Defendants

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2), the undersigned hereby certifies that this brief contains 3,463 words as calculated by WordPerfect X9, excluding the caption, Certificate of Compliance, counsel signature, and Certificate of Service. The undersigned also certifies that this brief is typewritten and double-spaced excluding block quotes, in 14-point font.

DATED this 30th day of June, 2023.

        MARRA, EVENSON & LEVINE, P.C.
        2 Railroad Square, Suite C
        P.O. Box 1525
        Great Falls, MT 59403-1525

        By: /s/ Kirk D. Evenson
         Kirk D. Evenson
         Attorneys for Defendants